UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Nº 11-CV-3155 (JFB) (ARL)

---

OMER LEVY,

Plaintiff,

VERSUS

RECEIVABLES PERFORMANCE MANAGEMENT, LLC & MAIN STREET ACQUISITION CORP.,

Defendants.

---

**MEMORANDUM AND ORDER**
September 23, 2013

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Omer Levy ("Levy" or "plaintiff") brings this action against Receivables Performance Management, LLC ("RPM" or "defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et. seq.*[1] This lawsuit is based on the telephone exchanges that took place between the parties during the latter half of 2010 in regards to a debt incurred by plaintiff. Plaintiff alleges that RPM used a robo-dialer to call his cell phone at least 284 times over the course of four months in an attempt to collect on a debt in violation of both the FDCPA and the TCPA, entitling plaintiff to an award of damages.

Presently before this Court are motions for partial summary judgment on the TCPA claim. Plaintiff moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the TCPA claim, arguing that RPM placed calls to plaintiff's cell phone via an automatic telephone dialing system without plaintiff's prior express consent, in violation of the TCPA. Defendant cross moves, also pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the TCPA claim, on the ground that plaintiff's provision of a former cell phone number on his initial credit application, as well as his initiation of phone calls to RPM from his cell phone, constitutes prior express consent, thereby exempting RPM from

[1] Although Main Street Acquisition Corp. was initially named as a defendant in this action, it was not so named in the second amended complaint, filed on May 11, 2012, or the third amended complaint, filed on July 17, 2012. Accordingly, this case is no longer proceeding against Main Street Acquisition Corp.

TCPA liability. For the reasons discussed in detail below, summary judgment is granted in plaintiff's favor on the TCPA claim.

It is uncontroverted that RPM called plaintiff's cell phone via an automatic telephone dialing system. Thus, under the plain language of the statute, there must have been an emergency situation or plaintiff must have provided prior express consent to be so contacted in order for RPM to avoid TCPA liability for its actions. However, there is no indication that emergency conditions existed, nor is there any evidence demonstrating that plaintiff provided prior express consent as defined by the statute.

With respect to the issue of prior express consent, both the FCC and various federal courts have deemed a debtor's provision of his or her cell phone number to a creditor or a debt collection agency during the lifespan of the debt to constitute prior express consent under the TCPA. Thus, in situations where a debtor listed his or her cell phone number on an initial credit application or directly informed his or her creditor or debt collection agency that he or she could be contacted at a specific cell phone number in regards to a debt, courts have found prior express consent. Here, it is undisputed that any cell phone number that appears on plaintiff's initial credit application is not the same cell phone number that RPM proceeded to dial for plaintiff. Moreover, it is uncontroverted that RPM received plaintiff's cell phone number from a third-party, and not from plaintiff. Although RPM argues that plaintiff should, nevertheless, be deemed to have provided prior express consent by virtue of the fact that he, at times, initiated calls to RPM and, at least on one occasion, verified the cell phone number from which he was calling, the fact of the matter is that plaintiff took no affirmative act rising to the level of prior express consent. For this reason, and as discussed in detail *supra*, no rational jury as a matter of law could conclude, based on the undisputed facts of this case, that RPM had plaintiff's prior express consent to be contacted on the specific cell phone number that RPM dialed via an automatic telephone dialing system to reach plaintiff for debt collection purposes. Accordingly, summary judgment is warranted in plaintiff's favor on the TCPA claim. Plaintiff's motion for summary judgment on TCPA liability is, therefore, granted and defendant's cross-motion for summary judgment on the claim is denied.

However, because genuine issues of material fact exist with regard to whether RPM's violation of the TCPA was knowing and willful, the issue of whether plaintiff is entitled to treble damages on his TCPA claim cannot be resolved at this juncture. Thus, both parties' motions for summary judgment are denied with respect to the treble damages issue.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has

not pointed to any evidence in the record to contradict it.[2]

Plaintiff incurred a debt related to an Ameritech Gold MasterCard ("MasterCard") that he opened with a company called Household Finance ("Household") sometime between 2004 and 2005. (Defs.' 56.1 ¶ A.1;[3] *see also* Pl.'s Aff. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Aff.") ¶ 19.) At some point in time, Household sold the right to collect the debt to a company called Main Street Acquisitions, who later hired RPM, a debt collector, to collect the money that plaintiff allegedly owed. (*See* Joseph Mauro Aff. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Mauro Aff.") Ex. E, Christopher Vittoz Dep. ("Vittoz Dep."), at 19.)

RPM obtained plaintiff's cell phone number by purchasing it from a company called Trans Union on July 16, 2010. (Pl.'s 56.1 ¶ 10.) According to Vittoz, a representative for RPM, RPM asked Trans Union for any type of phone number that they had for plaintiff; the number RPM received came with no indication that it was for a cell phone. (*See* Vittoz Dep. at 134.) Upon receiving plaintiff's number, RPM did not conduct any research to determine whether it was a cellular number before dialing it (Pl.'s 56.1 ¶ 12), despite the fact that RPM had been aware, since 2008, of a service that could be used to discern whether a particular number was for a cell phone (*id.* ¶ 13). Vittoz testified that, at the time it received plaintiff's number, RPM was under the impression that they were receiving only *home* telephone numbers from Trans Union. (Vittoz Dep. at 137.) Thus, the number Trans Union provided for plaintiff was placed into the "home phone number field" in RPM's automatic telephone dialing system ("ATDS"). (*Id.* at 137-38.) Vittoz admitted, however, that RPM did not know definitively whether that number was for a home telephone, but that everyone who worked on the account at RPM later treated the number as if it were for a home phone line. (*Id.* at 138.)

The number that RPM received for plaintiff (and proceeded to dial on numerous occasions) was actually for plaintiff's cell phone. It was not the cell phone number that plaintiff was using at the time he applied for his MasterCard; it is a number that he opened with T-Mobile in August 2007 and continued using when he switched to Metro PCS on approximately October 10, 2010. (Def.'s 56.1 ¶¶ A.5, A.11, A.24.)[4] RPM claims that the cell phone number plaintiff had at the time he applied for his MasterCard is the number that plaintiff listed as his "work number" on his MasterCard application. (*See* Vittoz Dep. at 17; Def.'s Mem. of Law in Supp. of Cross Mot. for Partial Summ. J. ("Def.'s Cross Mot.") Ex. B, Gold MasterCard Acceptance

---

[2] Although the parties' Rule 56.1 statements contain specific citations to the record, the Court cites to the Rule 56.1 statements, rather than to the underlying citations.

[3] Defendant's 56.1 statement first responds to plaintiff's 56.1 statement with corresponding numbered paragraphs (numbered 1 through 56). This is followed by a list of additional material facts (numbered 1 through 68). For purposes of this Memorandum and Order, the Court refers to the first 56 paragraphs that respond to plaintiff's 56.1 statement as paragraphs 1 through 56, and the paragraphs numbered 1 through 68 that address additional facts as paragraphs A.1-A.68.

[4] Plaintiff does not dispute that he gave this cell phone number out to his parents, friends, employer, and business associates (Def.'s 56.1 ¶ A.13), that, starting in March 2011, he posted this cell phone number on his website (*id.* ¶ A.14), and that he did not maintain a residential landline in 2010 during the entire period RPM sought to collect the debt at issue (*id.* ¶ A.16).

Certificate.[5]) With regard to the fees plaintiff was charged for use of the newer cell phone number (the one that RPM obtained and subsequently called), it is undisputed that, while using T-Mobile, plaintiff paid approximately $50 a month for a 1,000 minute during the day and unlimited at night plan (Pl.'s 56.1 ¶ 26), and that he was charged a flat rate of $40 (no matter how many minutes he used) when he switched to Metro PCS (*id.* ¶¶ 28-29).

RPM never received any written communication from plaintiff authorizing RPM to call plaintiff's new cell phone number with its ATDS (*id.* ¶ 8), nor did RPM ever receive anything in writing from plaintiff requesting that it not call him at that number (Def.'s 56.1 ¶ A.37). After receiving plaintiff's cell phone number, RPM proceeded to call plaintiff's cell phone 38 times before reaching plaintiff, for the first time, on August 24, 2010. (Pl.'s 56.1 ¶¶ 11, 14.)[6] According to plaintiff, RPM was informed during the August 24th call that the number it had dialed was for a cell phone and that plaintiff no longer wished to be contacted. (*Id.* ¶¶ 15-16.) RPM disputes these assertions, arguing that collection notes do not indicate that plaintiff informed RPM of either of these two facts. (Def.'s 56.1 ¶¶ 15-16.) RPM called plaintiff again on August 28, 2010. (Pl.'s 56.1 ¶ 17.) Plaintiff claims that he again told RPM that the number was for a cell phone and that he did not want to be contacted by RPM again (*id.* ¶¶ 18-19), but RPM disputes that it was informed of those two facts (Def.'s 56.1 ¶¶ 18-19). On August 31, 2010, RPM again called plaintiff. (Pl.'s 56.1 ¶ 20.)

Plaintiff called RPM on September 1 and 14, 2010, and again on December 31, 2010. (*Id.* ¶¶ 21, 24, 27.) Plaintiff claims that he again told RPM during all three calls that the number RPM was using to contact him was for a cell phone and that he no longer wished to be contacted by RPM. (*Id.* ¶¶ 22-23, 25-26, 28-29.) Around this time, plaintiff told RPM, during one of the calls, that he owed in the "ballpark" of $22,000. (Def.'s 56.1 ¶¶ A.51-A.52.) Plaintiff also informed RPM that he would not pay the alleged debt owed unless he received something in writing. (*See* Mauro Aff. Ex. B, Pl.'s Dep., at 81-82 (explaining that he expressed his resistance to paying the debt until he received information in writing on numerous occasions – approximately 5-8 times); *id.* at 86 ("[I]t wasn't a topic that I would be willing to discuss over the phone or agree to

[5] The Court notes that plaintiff disputes having filled out the document attached as Exhibit B to RPM's cross-motion for summary judgment, and does not remember placing his cell phone number on the initial application that he completed for the MasterCard. (*See* Pl.'s Aff. in Opp'n to Def.'s Cross Mot. for Summ. J. ("Pl.'s Opp'n Aff.") ¶ 2.) At oral argument, counsel for RPM indicated that plaintiff was not questioned about Exhibit B at his deposition simply because the document was not in counsel's possession at the time that the deposition was taken. (Oral Arg., Jan. 22, 2013.) Counsel represented, however, that the address and employment information contained on the document matches plaintiff's actual address and place of employment. Because, as discussed in detail *supra*, the fact about the initial application that is relevant to summary judgment is whether the cell phone number for plaintiff that RPM proceeded to dial was listed on the initial credit application, and it is uncontroverted that it was not, the dispute about whether or not plaintiff's former cell phone number appears on his credit application need not be resolved for purposes of resolving the pending motions.

[6] RPM claims that it sent a validation letter to plaintiff before making this initial call, on July 16, 2010, advising him that he could dispute his debt related to the MasterCard in writing. (Def.'s 56.1 ¶ A.7.) Plaintiff denies having ever received such a letter. (*Id.* ¶ A.8.) This dispute is not material for resolution of the TCPA claim.

anything over the phone, because I simply did not trust them. They were just a voice over the phone.").) Between July 17, 2010 and January 18, 2011, RPM called plaintiff's cell phone number 284 times. (Pl.'s 56.1 ¶ 33.)[7] RPM called plaintiff's cell phone number again in November 2011 in an attempt to collect a debt (*id.* ¶ 49), and continued to call plaintiff on and after December 4, 2010 (*id.* ¶¶ 51-52).

RPM called plaintiff as many as 5 times in a single day (*id.* ¶ 53), and as many as 31 times per week (*id.* ¶ 54). According to plaintiff, he received calls from RPM on his cell phone at various points in his day, including, but not limited to, moments when he was in the bathroom, during Army training drills, and while he was in Synagogue. (*See* Pl.'s Aff. ¶ 15.) Plaintiff states that he informed the callers that he would get an attorney, and even threatened to sue them, but that the calls, nevertheless, persisted. (*Id.*) Although plaintiff claims that RPM recorded some of the phone calls it had with plaintiff (Pl.'s 56.1 ¶ 50), RPM disputes this fact (Def.'s 56.1 ¶ 50). Plaintiff also states that he was threatened during certain phone calls by representatives of RPM – threatened that he would be sued, that his salary would be garnished, and that he would be charged three times the amount of his alleged debt – and that, during one call, a representative told him that he should "go back to Israel." (*See* Pl.'s Aff. ¶ 14.)

[7] The Court notes that, although RPM disputes the fact that the 284 calls were made "purposely," RPM does not dispute the fact that such number of calls were made. (*See id.* ¶ 33.) Accordingly, the Court deems the fact that RPM called plaintiff's cell phone 284 times between July 17, 2010 and January 18, 2011 uncontroverted.

B. Procedural History

The complaint in this action was filed on June 30, 2011. RPM answered the complaint on August 17, 2011. On January 26, 2012, plaintiff filed an amended complaint. RPM filed an answer to the amended complaint, as well as a cross-claim for contribution and indemnification from all co-defendants, on February 9, 2012. On May 11, 2012, plaintiff filed a second amended complaint, which RPM answered on June 7, 2012. On July 17, 2012, plaintiff filed a third amended complaint, and RPM answered on August 17, 2012.[8]

Plaintiff filed a motion for partial summary judgment on October 15, 2012. On November 15, 2012, RPM filed a cross-motion for partial summary judgment. Plaintiff filed an opposition to RPM's cross-motion and a reply in further support of its motion on December 3, 2012, and RPM filed a reply in further support of its cross-motion on December 17, 2012. Oral argument was held on January 22, 2013.

Since oral argument, the parties have submitted numerous letters to the Court regarding developments in the relevant case law. On February 1, 2013, plaintiff submitted a letter to the Court, which RPM responded to by letter dated February 8, 2013. Plaintiff submitted another letter to the Court on May 9, 2013, to which RPM responded by letter dated May 13, 2013. RPM sent an additional letter to the Court on May 31, 2013. Plaintiff sent a letter to the Court on August 15, 2013, to which RPM responded by letter dated August 20, 2013.

[8] Since answering, RPM withdrew its defense as to whether the phone system used to call plaintiff constitutes an ATDS as defined under the TCPA (and stipulated to the fact that the phone system RPM used constitutes an ATDS). (*See* Mauro Aff. Ex. A, Stip. between the parties.)

Plaintiff sent another letter to the Court on August 27, 2013, and RPM responded by letter dated August 29, 2013. RPM sent another letter to the Court on September 12, 2013. The Court has thoroughly reviewed the arguments and submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

Both summary judgment motions presently before this Court pertain exclusively to the TCPA claim. Accordingly, the Court will first discuss the relevant aspects of the Act and then proceed

to analyze the applicability of the Act to the facts of this case, as well as the issues of liability and treble damages raised in the parties' motions.

A. Applicable Law

Plaintiff alleges that RPM called his cell phone using an ATDS in violation of Section 227(b)(1)(A)(iii) of the TCPA. That portion of the Act makes it unlawful for

> any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). Thus, to prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant did so using an ATDS or an artificial or pre-recorded voice. To qualify as an ATDS under the Act, equipment "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

The TCPA explicitly exempts from liability autodialed calls to a cell phone "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). "Prior express consent" is, therefore, an affirmative defense to an alleged TCPA violation, for which the defendant bears the burden of proof. *See Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) (citing *In re Rules Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 565 (2008) ("2008 TCPA Order") ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.")).

B. Analysis

1. Applicability of the TCPA

To the extent RPM argues that debt collection activities cannot give rise to a cause of action under the TCPA, the Court disagrees.[9] Autodialed debt collection calls are exempted from certain provisions of the TCPA. However, as discussed in detail below, such calls are not shielded from liability when they are made to a cell phone, like the calls at issue in this case.

The FCC regulations implementing the TCPA exempt certain types of autodialed debt collection calls. For example, autodialed calls "made to any person with whom the caller has an established business relationship" are exempted, *see* 47 C.F.R. § 64.1200(a)(2)(iv), and the FCC has clarified both that "all debt collection circumstances involve a prior or existing business relationship," and that the established business relationship exemption "appl[ies] where a third party places a debt collection call on behalf of the company

[9] The Court notes that this argument was not set forth in RPM's briefs; the issue was referenced in post-oral argument letter submissions to the Court. (*See, e.g.*, Sept. 12, 2013 Letter, ECF No. 104.)

holding the debt," *In re Rules Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8771-73 (1992) ("1992 FCC Order"). *See Meadows v. Franklin Collection Serv.*, 414 F. App'x 230, 235 (11th Cir. 2011). However, the existing business relationship exemption applies only to autodialed calls made to residential *landlines*. *See* 47 C.F.R. § 64.1200(a)(2). Thus, because the debt collection calls at issue in this case were undisputedly made to a cell phone, the existing business relationship exemption is inapplicable. *See Gager v. Dell Fin. Servs., LLC*, No. 12-2823, 2013 U.S. App. LEXIS 17579, at *19 (3d Cir. Aug. 22, 2013) (rejecting creditor's argument that its autodialed debt collection calls should be exempt from TCPA liability based on their content, as the particular calls were placed to the debtor's cell phone and the debt collection exemptions "do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to land-lines" (citing 47 C.F.R. § 64.1200(a)(2))).[10] Given that there is no comparable exemption in the TCPA for autodialed calls placed to cell phones, *see* 47 U.S.C. § 227(b)(1)(A)(iii) (exempting only autodialed calls to cell phones made with prior express consent and autodialed calls to cell phones made in emergency situations), RPM's debt collection calls to plaintiff's cell phone fall within the scope of the TCPA's regulations. *See Gager*, 2013 U.S. App. LEXIS 17579, at *20 ("Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones. Thus, the content-based exemptions invoked by [creditor] are inapposite."); *see also Forrest v. Genpact Servs., LLC*, No. 3:12-CV-2249, 2013 U.S. Dist. LEXIS 121172, at *5 (M.D. Pa. Aug. 26, 2013) (following the Third Circuit's analysis in *Gager* and rejecting defendant's argument that "[p]laintiff has failed to state a claim under the TCPA because the TCPA does not apply to debt collection calls," given that the debt collection calls at issue were placed to a cell phone).

2. TCPA Liability

RPM does not dispute that it used an ATDS, as defined by the TCPA, to call plaintiff. (*See* Pl.'s 56.1 ¶ 2; Def.'s 56.1 ¶ 2.) Also uncontroverted is that the number RPM dialed was plaintiff's cell phone number at the time. (*See* Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 3.) In defending itself against TCPA liability, however, RPM argues that plaintiff previously expressly consented to receiving the calls. RPM's argument is essentially that because plaintiff provided his former cell phone number to his creditor, Household, along with his initial credit application, plaintiff expressly consented to being contacted by RPM, the party charged with collecting the debt owed, at a subsequent cell phone number via an ATDS. Accordingly, RPM maintains that it should be exempt from TCPA liability, and that summary judgment should be entered in its

[10] To the extent RPM means to suggest that plaintiff's cell phone should be treated as a landline because plaintiff allegedly listed a cell phone number as his "work number" on his initial credit application and everyone at RPM treated the number as if it were for a landline, the Court finds any such argument unavailing. *See Gager*, 2013 U.S. App. LEXIS 17579, at *20 n.6 (rejecting creditor's argument that debtor's cell phone should be treated as if it were a landline simply because debtor listed her cell phone number as her home phone number on her credit application, and explaining that "[c]allers have a continuing responsibility to check the accuracy of their records to ensure that they are not inadvertently calling mobile numbers" (citing *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012) ("[C]ompanies who make automated calls bear the responsibility of regularly checking the accuracy of their account records[.]")) (additional citation omitted)).

favor on the TCPA claim. For the reasons discussed in detail below, the Court disagrees; the Court concludes that, based on the undisputed facts of this case, no rational jury could find as a matter of law that plaintiff rendered the type of prior express consent contemplated by the TCPA, and, thus, summary judgment is warranted in plaintiff's favor on this claim.

"Prior express consent" to be contacted on a cell phone via an ATDS in regards to a particular debt has been deemed granted in situations where a plaintiff provided his or her cell phone number to a creditor during the transaction that resulted in that particular debt. *See, e.g.*, *Castro v. Green Tree Servicing LLC*, 10-CV-7211 (ER), 2013 U.S. Dist. LEXIS 115089, at *59-60 (S.D.N.Y. Aug. 14, 2013); *Saunders v. NCO Fin. Sys.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) ("[T]he evidence at trial conclusively showed [plaintiff] provided her cellular telephone number to [creditor] in connection with her application for a student loan. The FCC has ruled this constitutes prior express consent under § 227(b) to receive autodialer calls related to debt collection."); *see also* 2008 TCPA Order, 23 FCC Rcd. at 564-65 (stating that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party" and concluding that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt").[11] For example, in a recent decision of a court within this district, *Saunders v. NCO Financial Systems*, the plaintiff conceded that by listing only his cell phone number with his creditor, he gave both his creditor and its collection agent "prior express consent" to be called at that number. 910 F. Supp. 2d at 467. The *Saunders* court noted that such was a "concession that plaintiff must make, as the authorities are almost unanimous in holding that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." *Id.* (citing cases); *see also id.* at

[11] The Court recognizes, as plaintiff points out, that there are district courts that have reviewed and rejected the FCC's rulings on this issue. *See, e.g.*, *Lusskin v. Seminole Comedy, Inc.*, 12-62173-Civ-Scola, 2013 U.S. Dist. LEXIS 86192, at *7-9 (S.D. Fla. June 19, 2013); *Mais v. Gulf Coast Collection Bureau, Inc.*, 11-61936-Civ-Scola, 2013 U.S. Dist. LEXIS 65603, at *16-32 (S.D. Fla. May 8, 2013). However, the overwhelming majority of district courts that have considered this issue have found that the FCC's rulings, including the 2008 TCPA Order, are binding on them (and not subject to review except by the federal courts of appeals), and have, therefore, found prior express consent in situations where a debtor directly provided his or her cell phone number to the creditor. *See, e.g.*, *Chavez v. Advantage Grp.*, 12-cv-02819-REB-MEH, 2013 U.S. Dist. LEXIS 110522, at *8 (D. Col. Aug. 5, 2013) (rejecting plaintiff's argument that would have the "practical effect of . . . set[ting] aside, annul[ing], or suspend[ing] the 2008 FCC Ruling" and joining "those courts that have found that the 2008 FCC Ruling is binding on the district courts and not subject to review except by federal courts of appeals" (citing cases) (internal quotation marks omitted)); *Greene v. DirecTV, Inc.*, 10 C 117, 2010 U.S. Dist. LEXIS 118270, at *8-9 (N.D. Ill. Nov. 8, 2010) (declining to address plaintiff's challenge to the FCC's interpretation of "express consent" because "[a] district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders" and, thus, such courts have "no jurisdiction to determine the validity of FCC orders"). In any event, the Court need not resolve this issue because, as discussed *supra*, in this particular case, it is undisputed that plaintiff did not directly provide the cell phone number that RPM proceeded to dial either at the time that he filled out his credit application with Household or at any other point during his creditor-debtor relationship.

468 ("Nothing compels a consumer to list his cell phone number with his counterparty when he opens an account, or to open an account at all, but if that is the number he chooses to provide, then he cannot complain about being called at that number.").[12]

Here, the parties dispute whether plaintiff provided a cell phone number on his initial application for credit. (*See* Pl.'s Opp'n Aff. ¶ 2.) However, the present case is different from the scenarios of other cases just discussed in that it is undisputed that the particular cell phone number for plaintiff that RPM received from Trans Union and proceeded to call does not appear anywhere on the application for credit that plaintiff initially submitted to Household. (*See* Pl.'s 56.1 ¶ 4; Def.'s 56.1 ¶ 4; Oral Arg., Jan. 22, 2013.) It is also undisputed that plaintiff filled out his credit application back in 2004 or 2005 (*see* Pl.'s Aff. ¶ 19), and that he did not obtain the cell phone number that RPM later called him at until a few years later, in 2007 (Def.'s 56.1 ¶ A.11). Moreover, it is uncontroverted that plaintiff never directly provided that new cell phone number (the number that RPM proceeded to call) to RPM or Household, and that RPM received the number from Trans Union, not plaintiff. (*See* Pl.'s 56.1 ¶ 10; Def.'s 56.1 ¶ 10.)[13] Thus, although the parties disagree about whether plaintiff provided his *former* cell phone number on his application for credit, it is uncontroverted that the cell phone number that RPM actually called was not listed anywhere on plaintiff's initial credit application, was not known to plaintiff at the time he submitted a credit application to Household, nor was it provided to RPM by plaintiff himself (as it is undisputed that the cell phone number was provided to RPM by Trans Union). This means that even if plaintiff listed a cell phone number on his initial application, thereby expressly consenting to be called at that number via an ATDS, in so doing, he most certainly could not have manifested consent to be contacted at a *different* cell phone number unbeknownst to him at the time, especially one that he never directly furnished to his creditor or its debt collection agency. *See Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012) (holding that the "prior express consent of the called party" exemption, by its plain language, requires that the person subscribing to the called number at the time the call is made have previously consented to being called, and thus concluding that because the persons subscribing to the called number at the time

---

[12] Plaintiff urges this Court to adopt a more narrow interpretation of "prior express consent" in the context of debtor-creditor relationships than that provided by the FCC in its 2008 TCPA Order and by courts following the 2008 TCPA Order. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Cross Mot. for Summ. J. and in Reply to Pl.'s Mot. for Partial Summ. J. ("Pl.'s Opp'n & Reply") at 3-6.) In so doing, plaintiff points to cases where courts required a plaintiff to take an even more affirmative step to denote its express consent to be contacted on his or her cell phone via an ATDS. *See, e.g.*, *Edeh v. Midland Credit Mgmt.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) ('"Express' means 'explicit,' not, as [defendant] seems to think, 'implicit.' [Defendant] was not permitted to make an automated call to [plaintiff's] cellular phone unless [plaintiff] had previously said to [defendant] . . . something like this: 'I give you permission to use an automatic telephone dialing system to call my cellular phone.'"). However, the Court need not reach the issue of whether an even more narrow reading of "express consent" is warranted than that of the FCC in its 2008 TCPA Order, for, as discussed *supra*, the uncontroverted evidence demonstrates that no prior express consent was furnished by plaintiff even under the broader reading of the phrase.

[13] Indeed, when asked at oral argument whether it is uncontroverted that plaintiff did not provide his new cell phone number on his initial credit application or on any other later application, either orally or in writing, in connection with this debt, counsel for RPM responded, "that is what the facts have demonstrated to date." (Oral Arg., Jan. 22, 2013.)

the call was placed were not the people who furnished the number to the creditor, they had not expressly consented to being called); *see also Moore v. Firstsource Advantage, LLC*, 07 CV-770, 2011 U.S. Dist. LEXIS 104517, at *30-31 (W.D.N.Y. Sept. 15, 2011) (explaining that the "relevant issue in evaluating 'prior express consent' is whether a phone number has voluntarily been provided [by the debtor] to the creditor"). Thus, the Court rejects defendant's contention that a grant of consent to be called at a prior cell phone number necessarily denotes express consent to be called at any subsequent cell phone number under the facts of this case.[14]

This conclusion is not contrary to the ones reached by other courts in cases like the ones mentioned above – cases where the plaintiff was deemed to have expressly consented to receiving calls via ATDS about a debt by furnishing his or her cell phone number to his or her creditor in connection with that debt. In those cases, there were *affirmative acts* of express consent taken by the plaintiffs, *i.e.* listing the cell phone number that was later called (either by the creditor or a debt collection agency) on the initial credit application, *see Johnson v. Credit Prot. Ass'n, L.P.*, No. 11-80604-CIV-MARRA, 2012 U.S. Dist. LEXIS 165647, at *10-12 (S.D. Fla. Nov. 20, 2012) (finding that plaintiff provided prior express consent to be contacted by Comcast's collection agency because plaintiff provided his cell phone number to Comcast when he set up his account), or providing an updated cell phone number directly to a creditor or debt collection agency during the lifespan of the debt, *see Sartori v. Susan C. Little & Assocs., P.A.*, No. 12-515 JB/lFG, 2013 U.S. Dist. LEXIS 117109, at *42-43 (D.N.M. June 27, 2013) (concluding that plaintiff consented to be called on his cell phone concerning his loan because he provided a cell phone number when applying for his loan and subsequently supplied an updated cell phone number for his creditor to use to call him, from that point on, in regards to the loan).[15] Here, plaintiff took no affirmative

[14] The Court notes that, at oral argument, counsel for defendant stated that this is precisely RPM's position, at least with respect to the first 38 calls RPM placed to plaintiff's cell phone before speaking to plaintiff. Counsel for defendant noted that RPM's theory with respect to those calls is that, by placing his former cell phone number on his initial credit application, plaintiff expressly consented to being called at any subsequent cell phone number he acquired. (*Id.*) However, RPM points to no authority to support this position (and did not cite any case at oral argument when prompted), nor is the Court aware of any case where another court adopted such an argument. In any event, for the reasons discussed *infra*, the Court deems the argument to be meritless.

[15] In its briefs, RPM goes to great lengths to try and convince this Court that plaintiff should at least be deemed to have expressly consented to calls that came after the first 38 due to the fact that plaintiff placed some of those calls to RPM from the cell phone number at issue. As discussed in more detail *supra*, the Court rejects defendant's argument that plaintiff's mere initiation of phone calls from his cell phone constitutes express consent for purposes of the TCPA. (*See id.* (explaining that a debtor calling a creditor or a debt collection agency to ask a question about his or her debt is much different than a debtor who expresses a desire to be contacted at a particular number in regards to the debt).) Although not set forth in RPM's briefs, at oral argument, counsel for RPM argued that plaintiff did more than merely initiate calls to RPM from his cell phone – that he "verified" his cell phone number and "updated" his contact information in such a way as to constitute express consent to be called by RPM at his cell phone number via an ATDS. (*Id.*) In support of this assertion, counsel pointed to one piece of evidence – namely, that Humberto Lugo ("Lugo"), a representative of RPM, testified at his deposition that, on July 5, 2011, plaintiff called RPM and Lugo verified the number that plaintiff was calling from. (*See* Lugo Dep. at 30-31 ("Q. What happened on July 5th 2011? A. Oh, I don't know what happened in that. I wasn't at the phone call. Well, let me just state it. He called in. I update – I verified the number where he called in from. I talked to the guy. He

action, as it is undisputed that he did not place the cell phone number that RPM called on his initial credit application, nor did he provide it directly to RPM or Household at some later point in time. Thus, even if plaintiff could be deemed to have expressly consented to being called at his *former* cell phone number at the time that he applied for credit from Household, no rational jury could conclude as a matter of law that, under the facts of this case, he expressly consented to being called at the new cell phone number that RPM obtained from Trans Union and proceeded to dial.[16]

One of RPM's arguments in cross-moving for summary judgment on the TCPA claim is that, because plaintiff did not have a landline, the only way to contact him was on his cell phone, thus exempting RPM from liability under the TCPA for attempting to contact plaintiff on his only number. This argument is unavailing. There are only two statutory exemptions to the TCPA's prohibition on calls placed to a cell phone via ATDS: (1) emergency situations, and (2) instances where the caller has given prior express consent to be contacted at that number. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Nowhere in the plain language of the statute exists any indication of a third exemption for situations where the person attempting to be called via ATDS has no number other than a cell phone. Moreover, to the extent RPM argues that the fact that plaintiff has no non-cell phone number at which to be reached establishes prior express consent to be called at his cell phone number, there is simply no authority for such a proposition. Indeed, such reasoning would exclude the increasingly large percentage of the population that telecommunicates solely via cell phone from the TCPA's protections. Thus, this argument proffered by RPM, which has no support in the plain language of the statute, has no impact on the TCPA liability analysis.

Another argument offered by RPM in support of its cross-motion for summary judgment is that plaintiff provided prior express consent by initiating calls to RPM and/or discussing his financial information and a potential settlement of the debt dispute with representatives of RPM. Plaintiff does not dispute that he called RPM on numerous occasions. (*See*, *e.g.*, Pl.'s 56.1 ¶¶ 21, 24, 27.) However, it is uncontroverted that the first contact between plaintiff and RPM was initiated by RPM, not plaintiff (*see* Pl.'s 56.1 ¶¶ 11, 14; Def.'s 56.1 ¶¶ 11,14), and that RPM received the cell phone number that it dialed to reach plaintiff from Trans Union, not plaintiff (*see* Pl.'s 56.1 ¶ 10; Def.'s 56.1 ¶ 10). Thus, because prior express consent is deemed to be granted "only if the wireless number was provided by the consumer to the creditor, and that

---

wanted 30 percent – pay 30 percent of the debt. That's something that [the creditor] doen't offer in our offices. Call was ended. After that, I don't know what happened with the call. Q. Well, you don't remember any of what you just said. Correct? A. Well, it's based on the notes here. Q. Okay. But you don't have any personal recollection of that? A. Nope.").) However, even if true, this does not constitute an affirmative act by plaintiff evidencing prior express consent under the TCPA; it merely indicates that plaintiff verified the number that he was calling from when prompted to do so by RPM's representative. Such evidence is insufficient as a matter of law to constitute prior express consent under the circumstances of this case, and there is no other evidence in the record tending to support counsel's argument that plaintiff took the type of affirmative act that constitutes prior express consent under the TCPA while initiating calls to RPM.

[16] Although plaintiff urges the Court to consider the issue of the revocation of prior express consent, because no rational jury could conclude, based on the uncontroverted facts of this case, that plaintiff provided prior express consent in the first instance, the Court need not address the issue of whether or not express consent can be revoked under the TCPA (and whether or not it occurred in this case).

such number was provided during the transaction that resulted in the debt owed," 2008 TCPA Order, 23 FCC Rcd. at 564-65, RPM's argument fails. The fact that plaintiff later contacted RPM and discussed financial and/or settlement issues with its representatives does not create prior express consent in the face of the uncontroverted evidence demonstrating that RPM received the cell phone number that it dialed for plaintiff from someone other than plaintiff. *See Castro*, 2013 U.S. Dist. LEXIS 115089, at *60 ("Defendants' argument [in support of summary judgment on a TCPA claim] that Plaintiffs 'consented' to the calls at issue by initiating calls to Defendants using their cell phones must fail" because plaintiffs expressed belief that their numbers were captured by defendants by a Caller ID and "[t]he FCC has noted . . . that if a caller's number is 'captured' by a Caller ID without notice to the caller, 'the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls"' (quoting 1992 FCC Order, 7 FCC Rcd. at 8769)). Accordingly, this argument proffered by RPM is also meritless.

RPM further attempts to escape liability by arguing that plaintiff's failure to prove that he was charged for RPM's calls to his cell phone is fatal to the TCPA claim. (Def.'s Cross Mot. at 19-24.) To make this argument, RPM takes a portion of the statutory language out of context – "for which the called party is charged for the call" – in an effort to impose a requirement on the plaintiff that he demonstrate that he was charged for the calls made by RPM's ATDS in order to recover under the TCPA. However, as plaintiff indicates, courts faced with this argument have deemed it meritless as a matter of statutory construction, and thus "have routinely held that a plaintiff need not prove that he was charged for a cellular phone call to state a claim under the TCPA." *Castro*, 2013 U.S. Dist. LEXIS 115089, at *57-58 ("Under the 'rule of the last antecedent,' which provides that, where no contrary intention appears, a limiting clause or phrase should be read as modifying only the noun or phrase that it immediately follows, the Court finds that the phrase 'for which the called party is charged for the call' only modifies 'any service.'" (citing cases)); *see, e.g.*, *Lynn v. Monarch Recovery Mgmt.*, No. WDQ-11-2824, 2013 U.S. Dist. LEXIS 84841, at *28-29 n.37 (D. Md. June 17, 2013) ("[Defendant] does not dispute that, under the doctrine of last antecedent, the phrase 'for which the called party is charged for the call' only modifies 'any service.'" (citing cases)); *Manfred v. Bennett Law*, No. 12-CV-61548, 2012 U.S. Dist. LEXIS 173935, at *5 (S.D. Fl. Dec. 7, 2012) ("[T]he Court notes that the language of the statute makes it apparent that Plaintiff need not allege that he was charged for the call if he has alleged that the call was made to his cell phone."); *Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, at *14-15 (S.D. Cal. Feb. 9, 2011) (explaining that a plaintiff need not show that he was charged for the calls at issue in order to prevail under the TCPA); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("[R]eading the FCC's statement to require that a party be charged for a call in order for a violation of § 227 to occur is contrary to the plain language of the statute. Due to the occurrence of two disjunctive prepositions in the relevant portion of § 227, the phrase 'for which the called party is charged for the call' only modifies 'any service.'").[17] This Court

[17] Indeed, when asked at oral argument if there is any court that has held that a plaintiff must be charged for a cell phone call in order to prevail on a TCPA claim, counsel for defendant stated that there is not a single

agrees with the reasoning employed by numerous other courts – both within and outside of this circuit – and concludes, therefore, that plaintiff's failure to prove that he was charged for any of RPM's calls to his cell phone has no bearing on the efficacy of his TCPA claim.

In sum, because it is undisputed that RPM called plaintiff's cell phone via ATDS, and because no rational jury as a matter of law could conclude, based on the uncontroverted facts of this case, that plaintiff rendered prior express consent to be so called, summary judgment on the TCPA is warranted in plaintiff's favor. Accordingly, plaintiff's motion for partial summary judgment on TCPA liability is granted and RPM's cross-motion for partial summary judgment on that claim is denied.

3. Treble Damages

In addition to moving for summary judgment on liability, both parties urge this Court to grant summary judgment in their favor on the question of whether plaintiff may recover treble damages for the TCPA violations.

A person or entity that successfully establishes a TCPA violation under Section 227(b)(1)(A)(iii) may recover its actual monetary loss from the violation or receive $500 in damages for each such violation, whichever is greater. *See* 47 U.S.C. § 227(b)(3)(B). Moreover, if the Court finds that the defendant engaged in willful or knowing violations of the Act, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)," *i.e.*, three times the actual monetary loss resulting from the violation or $1500 in damages for each violation, whichever is greater. *See id.* § 227(b)(3).

As discussed *supra*, it is uncontroverted that RPM called plaintiff's cell phone via an ATDS, and the Court has concluded, as a matter of law, that plaintiff did not provide prior express consent to be so called. Accordingly, plaintiff is entitled to damages on his TCPA claim. The question that remains, however, is whether plaintiff is also entitled to enhanced damages under the TCPA – damages that are available to plaintiffs that can successfully establish knowing and willful violations of the Act by their defendants. In support of his motion for summary judgment on the issue of treble damages, plaintiff puts forth, *inter alia*, the following arguments and evidence: (1) plaintiff argues that RPM was aware, or that it was RPM's responsibility to have discovered, that the number for plaintiff that it received from Trans Union was for a cell phone; (2) plaintiff submits his deposition testimony and affidavits indicating that he demanded, on numerous occasions, that RPM stop calling his cell phone; and (3) plaintiff points to other cases in which RPM has been sued under the TCPA for calling cell phones via ATDS. (*See* Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mot.") at 17-24.) Although abundant, these arguments and this evidence are not uncontroverted.

For example, RPM's Rule 30(b)(60) witness, Vittoz, testified that, although RPM did not conduct any research to determine if the number for plaintiff that it received from

---

case that has reached that conclusion. (Oral Arg., Jan. 22, 2013.) Nevertheless, counsel for defendant encouraged the Court to consider the purpose of the Act and reject the statutory interpretation adopted by courts that have held that a plaintiff need not establish that he or she was charged for a cell phone call in order to prevail under the TCPA, which this Court declines to do.

Trans Union was a cell phone number before dialing it, RPM believed that it was only receiving home telephone numbers from Trans Union at the time and received no indication, prior to dialing, that the number was for a cell phone. (*See* Vittoz Dep. at 134, 137.) Moreover, Vittoz testified that the number for plaintiff that RPM received from Trans Union was placed into the "home phone number field" in RPM's ATDS, and that everyone at RPM who worked on plaintiff's account treated the number as if it pertained to a home telephone line. (*Id.* at 137-38.) RPM has, therefore, raised an issue of fact as to whether its calls to plaintiff's cell phone – at least its initial ones – were made knowing and willfully. Accordingly, a jury is entitled to assess the credibility of the witnesses at trial. *See Castro*, 2013 U.S. Dist. LEXIS 115089, at *62 n.28 (citing *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.")).

In regards to plaintiff's assertion that he informed RPM, on numerous occasions, that the number it was calling was for his cell phone and that he no longer wished to be contacted by RPM at that number, RPM disputes that fact and points to the collection notes of its representatives taken during calls between the parties that are devoid of any documentation of such an exchange. (*See, e.g.*, Def.'s 56.1 ¶¶ 15, 18, 19.) Again, given this factual dispute, a jury must assess the credibility of both plaintiff and RPM's witnesses at trial on this issue. Moreover, even if plaintiff did inform RPM of the fact that they were calling his cell phone and that he no longer wished to receive calls from RPM on that number, and even if that was enough to earmark a knowing and willful violation on the part of RPM by continuing to call, a factual issue exists as to when exactly that exchange occurred. Because treble damages are assessed based on each individual violation, the exact point at which RPM's actions became knowing and willful (assuming they ever did) would need to first be ascertained – something that this Court cannot determine based on the disputed facts presently before it. With respect to the other cases plaintiff highlights in which RPM has been sued for similar conduct, the fact that RPM has been found to have violated the TCPA in other instances does not suggest, as a matter of law, that they acted knowing and willfully when they used their ATDS to place calls to plaintiff's cell phone. For all of these reasons, the Court finds that the question of treble damages cannot be resolved on a motion for summary judgment. Accordingly, because genuine issues of material fact exist with regard to the knowledge and/or willfulness of RPM, both parties' requests for summary judgment on this issue is denied. *See Castro*, 2013 U.S. Dist. LEXIS 115089, at *61-63 n.28 (denying summary judgment on the issue of treble damages because conflicting versions of events that bore on the knowledge and/or willfulness of the defendants' alleged TCPA violations needed to be resolved by a jury at trial).

## IV. CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for partial summary judgment on the TCPA claim and denies defendant's cross-motion for summary judgment on that claim. However, the Court denies both motions for summary judgment on the issue of treble damages.[18]

SO ORDERED.

______________________

JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2013
Central Islip, NY

* * *

Plaintiff is represented by Joseph Mauro, The Law Office of Joseph Mauro, LLC, 306 McCall Avenue, West Islip, N.Y. 11795. Defendant is represented by Peter Cipparulo, 349 Doctors Way, Suite K, Hillsborough, N.J. 08844, and Alba Alessandro or Hodgson Russ LLP, 60 E. 42nd Street, 37th Floor, New York, N.Y. 10165.

[18] Plaintiff has also filed a spoliation motion seeking sanctions against RPM based upon its alleged destruction of recordings of certain telephone calls that took place between the parties. Defendant opposes that motion on the grounds that, *inter alia*, plaintiff has failed to prove that the recordings ever even existed. The Court need not resolve plaintiff's motion before addressing the partial summary judgment motions on the TCPA claim because, as discussed *supra*, plaintiff is entitled to summary judgment on that claim even without the alleged additional evidence that plaintiff asserts was destroyed. Thus, the Court is continuing to review that motion and will address it at a future time.