UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMER LEVY,<br><br>                              Plaintiff,<br><br>          vs.<br><br>RECEIVABLES PERFORMANCE<br>MANAGEMENT, LLC.<br><br>                              Defendants. | Docket No. 11-cv-3155<br><br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM

Law Offices of Peter Cipparulo, III, LLC
349 Route 206, Suite K
Hillsborough, NJ 08844
(908) 275-8777
Attorney for Defendant

Peter Cipparulo, III
On the brief

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .............................................................................. 1

II.    ARGUMENT.................................................................................................... 2

    i.  There is a Controlling Issue of Law Which Can Be Resolved Without Review
        Of the Evidentiary Record ........................................................................... 2

    ii. Substantial Grounds for Difference of Opinion Are Present ........................... 4

    iii. An Immediate Appeal May Materially Advance the Ultimate Termination of
        the Litigation............................................................................................... 6

    iv. The Mais Decision Supports Certification Under 28 U.S.C.§1292(b) ............... 9

III.   CONCLUSION ............................................................................................... 9

# TABLE OF AUTHORITIES

Analect LLC v. Fifth Third Bancorp, 2009 W.L. 2568540 ................................................ 2,9
In Re Duplan Corp., 591 F. 2d. 139, 148 (2d. Cir. 1978)..................................................... 7
Emanuel v. Los Angeles Lakers, Inc. 2013 WL 1719935 (C.D. Cal. 2013) ...................... 5
Haley v. Cruz Network Assistance, LLC 2013 WL 5937007 (W.D.N.Y.) .......................... 9,10
Ibey v. Taco Bell, 2012 WL 2401972 (S.D. Cal. June 18, 2012) ...................................... 5.6
Mais v. Gulf Coast Collection Bureau, Inc., 2013 W.L. 1899616, - F. Supp. 2d - (S.D. Fla) .................................................................................................................................. 9
Mims v. Arrow Financial Services, LLC, 132 S. CT. 742 2012 ......................................... 9
Nigro v. Mercantile Adjustment Bureau, LLC, 2013 WL 951497 (W.D.N.Y. 2013) ............ 4
Pereira v. Cogan, 265 B.R. 32, 34 (S.D.N.Y. 2001) ........................................................ 7
Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)...........6
Pollack v. Laidlaw Holdings, Inc., 1993 WL 254932 (S.D.N.Y.)........................................ 8
Republic of Columbia v. Diageo North America, Inc., 619 F.Supp. 2d 7 (E.D.N.Y. 2007). 2
Saunders v. NCO Financial Systems, 910 F. Supp. 2d 464 (E.D.N.Y. 2012).........4,9,10
S.E.C v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)........................ 2
Starkey v. First Source Advantage, LLC, 2010 WL 2541756 at *6 (W.D. N.Y.)................. 10
Sussman v. I. C. System, Inc. 2013 WL 5863664 (S.D.N.Y)............................................. 7,9
Telectronics Proprietary, Ltd. v. Medtronic, Inc., 590 F.Supp. 170 (S.D.N.Y. 1987).......... 8

**Statutes**

28 U.S.C. §1292(b) ....................................................................................................... 1,9,10

## PRELIMINARY STATEMENT

Instead of arguing the merits of RPM's motion for leave to file an interlocutory appeal, Plaintiff's opposition is purposefully inflammatory to deflect from the merits of the motion.  A dispassionate review demonstrates that certification of the interlocutory appeal is appropriate under 28 U.S.C. §1292(b).

Contrary to plaintiff's argument that defendant is seeking certification to delay the advances of litigation, in fact, certification would advance this litigation to ultimate conclusion.  Plaintiff conveniently fails to inform the Court that RPM tendered two Offers of Judgment (both of which lapsed without response) to resolve the FDCPA violations more than one year before the court issued its September 23 decision.

Further, as shown by the accompanying Declaration of Andrew D. Shafer, Plaintiff has disingenuously mischaracterized early conversations Mr. Mauro had with Mr. Shafer regarding settlement.  Because of the magnitude of Mr. Levy's demands, RPM did indicate it would litigate this case to conclusion because of the unreasonableness of the demand and the importance to it in resolving the legal question presented.  However, RPM has no desire to "ware [sic] down the plaintiff and his counsel"[1] as Plaintiff contends. Plaintiff mischaracterizes these early settlement conversations as part of his tactic of ignoring the merits of the motion in favor of inflammatory rhetoric.  It is respectfully submitted that if the TCPA aspect of this litigation were to resolve, then this litigation would quickly come to an end.

Defendant will review each of the three elements necessary for certification of appeal as its reply to defendant's opposition.

---

[1] Levy Opposition Memorandum at page 2.

**ARGUMENT**

I.   THERE IS A CONTROLLING ISSUE OF LAW WHICH CAN BE RESOLVED WITHOUT REVIEW OF THE EVIDENTIARY RECORD

As stated in Republic of Columbia v. Diageo North America, Inc., 619 F.Supp. 2d 7 (E.D.N.Y. 2007), "the first element is satisfied where the issues are difficult and of first impression." Id. at 11.   Further, "in determining where a controlling question of law exists, the district court should consider whether reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting a dismissal could significantly affect the conduct of the action, or a certified issue has precedential value for a large number of cases." Analect LLC v. Fifth Third Bancorp, 2009 W.L. 2568540 at *4 citing S.E.C v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).   While the Analect case did not find that the issue involved "a controlling question of law" for which interlocutory appeal is warranted, Your Honor noted that it involved "garden variety breach of contract claim" which involved a distribution agreement between parties. Id.   Conversely, this case involves far more than a "garden variety" claim.

Here, RPM submits that the FCC's 2008 Order does not limit the circumstances by which a consumer can give "prior express consent."   Instead, RPM has argued throughout that the FCC's 2008 Order merely takes one *example* of a debtor's conduct (providing a cell phone number on a credit application) as an *illustration* of how consent may manifest itself.   RPM has asked this court to go further.   It has asked the court to define actions constituting prior express consent in addition to the limited example the FCC formulated in 2008.   As such, RPM asks the court to recognize that Mr. Levy's *conduct* in calling RPM on his cell phone just as much manifested express consent as it

-2-

would have had he put the phone number at issue on his credit application, instead of the since abandoned cellular phone number he *did* provide on his credit application. This is the central and controlling issue before this court.

Contrary to Plaintiff's contention, this central issue is unresolved.   RPM has discovered no reported decision in which any court has ventured beyond the narrow example of prior express consent *by conduct* the FCC identified in 2008.  Simply, if the Second Circuit accepts RPM's argument, such a decision will constitute a sea change in the law.  Its precedential value will be extraordinary.

Here, the Court has found that defendant did not have plaintiff's express consent to contact defendant.  The court reached this conclusion based on the FCC's 2008 Order and cases that have adhered to that order.  However, in none of the cases on which Plaintiff relied, and on which the court based its decision, did the consumer engage in any back and forth negotiations with the creditor.  At a bare minimum, the court should have submitted this issue to the jury to answer the question of whether Mr. Levy's conduct constituted prior express consent.

While plaintiff claims that the Court rejected defendant's attempt to create a "third exception for people who could only be reached by cell phone and that such argument was not well founded because the uncontroverted evidence is that plaintiff could have been contacted via landline during the time period at work, or in the army" (see page 15 of plaintiff's opposition brief), the evidence in the litigation shows that in fact, the plaintiff could only be contacted by cell phone during the relevant time period.  This fact inescapably requires a court to address the issue of whether any conduct can ever constitute prior express consent.  Plainly, this issue should be decided by the Second

Circuit.  If the Second Circuit ultimately agrees with RPM's argument, then this matter will have to be retried to the jury.  RPM contends judicial economy justifies asking the Second Circuit to resolve the issue now, and not wait until after a trial occurs.

II. <u>SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ARE PRESENT</u>

As argued in defendant's moving papers, this Court did not address RPM's argument that the FCC's 2008 Order only gave an *example* of the type of conduct that manifested prior express consent when the Commission held, "we conclude that the provision of a cell phone that the TCPA has cited on the issue of what form of express consent – oral, written, **or some other kind** is required for calls that use an automatic telephone dialing system of pre-recorded voice to deliver a telemarketing message." FCC 12-21 at 9.

Contrary to plaintiff's interpretation of <u>Saunders v. NCO Financial Systems</u>, 910 F. Supp. 2d 464, 467 (E.D. N. Y. 2012) and <u>Nigro v. Mercantile Adjustment Bureau, LLC</u>, 2013 WL 951497 (W.D.N.Y. 2013), those cases support the argument that express consent was found to exist through conduct even though the plaintiff had not provide his number to the debt collection agency.  In <u>Saunders</u>, <u>supra</u>, the plaintiff tried to limit his consent to only the creditor.  The <u>Saunders</u> court rejected that notion. <u>Id</u>. at 468. In <u>Nigro</u>, <u>supra</u>, the plaintiff tried to limit his consent because he provided his cell phone only with respect to the termination of his account.  However, the Court determined that since the plaintiff has provided a cell phone number to the account holder, even if for a limited purpose, that the plaintiff had expressly been deemed to provide a cell phone number to the creditor's debt collection agency. <u>Id</u>. at *4.

Although this Court found that such findings were limited to those factual scenarios, they demonstrate that substantial grounds for difference of opinion exist for determining whether those decisions set the stage for this court, and the Second Circuit, to conclude that the plaintiff manifested his express consent by his conduct through his act of repeatedly initiating telephone calls to defendant as he attempted to negotiate a favorable settlement offer with RPM.

Plaintiff also completely misinterprets Emanuel v. Los Angeles Lakers, Inc. 2013 WL 1719935 (C.D. Cal. 2013). This case demonstrates that "prior express consent" can arise through conduct. There, the defendant used its scoreboard to invite fans attending a Lakers game to send text messages for display on the scoreboard. Emanuel sent such a text message. The Lakers sent him a confirming text message. Emanuel filed his suit based on the Laker's responding text message. The court rejected Emanuel's claim. This is analogous to the Levy litigation where defendant contacted plaintiff and plaintiff chose to respond and engaged in extensive settlement discussions with defendant.

Similarly, Ibey v. Taco Bell, 2012 WL 2401972 (S.D. Cal. June 18, 2012), demonstrates consent by conduct. There, the court dismissed a TCPA claim arising from Taco Bell's single text message acknowledging that Ibey wished to opt out of receiving promotional offers from this merchant. In dismissing plaintiff's claim, the court stated at Slip Op 3,

> Plaintiff expressly consented to contact by Defendant *when he initially texted 91318 to Defendant*...When Plaintiff decided he no longer wanted to receive in text communications, Plaintiff allegedly notified Defendant that he wished to stop communications, and *Defendant allegedly confirmed its receipt* of the message and Plaintiff's removal from Defendant's text-message communication list. ...Defendant's single,

confirmatory text message did not constitute unsolicited telemarketing; Plaintiff had initiated contact with Defendant. Further, *Defendant's sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA.* (Emphasis added)

These cases illustrate that courts are wrestling with the boundaries of FCC's 2008 definition of "prior express consent," by conduct. RPM submits that given the FCC 2008 Order, Congress's failure to define "prior express consent," and the courts' exploration of the meaning of the term, in various contexts, all illustrate the substantial differences of opinion as to the meaning of this undefined term. The uncertainty of where the boundaries of "prior express consent" lie, fully justifies allowing the appellate court to decide this legal issue now, rather than after trial.

## III. AN IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

It is essential to preserving judicial resources to avoid trying this matter now on the remaining issues only to run the risk of having to re-try it if the Second Circuit finds that the express consent issue should have been submitted to a jury.

As stated in the Analect decision, supra, although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely related. Id. at *5 citing Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). As further stated, the interlocutory appeal must "have the potential for substantially accelerating the disposition of the

litigation". <u>Id</u>. citing <u>In Re Duplan Corp.</u>, 591 F. 2d. 139, 148 n.11 (2d. Cir. 1978).  The Court also stated a possibility of retrial after final Order may support certification.  <u>Id</u>.[2]

Here, in contrast, the TCPA and FDCPA claims involve far different elements of proof, different defenses and different manner of recovering damages.  The FDCPA claims are multifaceted.  They include: the number of calls placed; the nature of comments made during the calls and whether that defendant's employee comments were harassing and misleading. (See Document No. 56 plaintiff's Amended Complaint.) These issues have nothing to do with the merits of the resolution of the TCPA claim. Moreover, RPM has tendered two Fed.R.Civ.P 68 Offers of Judgment, which Plaintiff has not accepted.  Should the Second Circuit rule in RPM's favor on the consent issue, RPM submits that this matter will quickly resolve since plaintiff has not made any showing that he has suffered actual damages compensable under the FDCPA.  His action for damages under the FDCPA is, therefore capped at $1000.

This case is conceptually closely akin to <u>Telectronics Proprietary, Ltd. v. Medtronic, Inc.</u>, 590 F.Supp. 170 (S.D.N.Y. 1987), [declaratory judgment seeking to invalidate a patent].  There, the controlling legal issue concerned the rules of professional conduct pertaining to whether a patent attorney can work with a corporate inventor to draft a patent application then subsequently represent interests seeking to invalidate the same patent.  <u>Id</u>. at 173.  Although that case involved a rather narrow

---

[2] Plaintiff's reliance on <u>Sussman v. I. C. System, Inc.</u> 2013 WL 5863664 (S.D.N.Y) is misplaced.  In that decision, the court found that the immediate appeal would not have materially advanced the ultimate termination of the litigation.  However, the Court found that the FDCPA claims, which would remain pending if the appeal was granted and section 399-P of the New York General Business law claims were closely related.  As stated in <u>Pereira v. Cogan</u>, 265 B.R. 32, 34 (S.D.N.Y. 2001), certification is inappropriate when the remaining claims are closely related and no appreciable savings will be realized by an appeal.  Thus, the <u>Sussman</u> Court found the case would still proceed with plaintiff's FDCPA claims which are closely related to the 399-p claims, even if the court dismissed the plaintiff's business section 399-p claims, <u>Id</u>. at * 6.

issue of even narrower scope, the District Court found that the determination of right to an interlocutory appeal materially advanced the ultimate termination of the litigation because it was closely tied to the controlling issue of law. Id. at 176. The court found that it was proper to certify its order for appeal because the appeal would avoid a retrial if ultimately it was determined that counsel had to be replaced due to the conflict issues. Id. In the within matter, a certification will potentially save this court, and the parties, from having to engage in a retrial should the Second Circuit determine that RPM was entitled to assert its express consent defense for the jury to decide.

In Pollack v. Laidlaw Holdings, Inc., 1993 WL 254932 (S.D.N.Y.), the plaintiffs brought an action to recover damages for misrepresentations made by the defendant in connection with investments. There were legal questions as to whether the plaintiffs' investments constituted "securities" under the Securities Act of 1933 and Securities Exchange Act of 1934. The Court found, "If certification of the Opinion was denied, a substantial duplication of effort might be required if, following trial, on the remaining claims, plaintiffs obtained a reversal of the Court's decision on appeal. Id. at *4. Similarly, in this case, if RPM prevails on appeal after a first trial, a new trial will have to be held to allow RPM to present its express consent defense and a retrial on the exemplary damages portion. Here, the gravamen of plaintiff's complaint and damages concerns the TCPA claim and, thus, it is appropriate to certify the Court's September 23 order for appeal.

## IV. THE MAIS DECISION SUPPORTS CERTIFICATION UNDER 28 U.S.C. §1292(b)

While the plaintiff attempts to argue that the Mais[3] decision is inapplicable, it is in fact, most revealing and persuasive. Both this case and Mais arise from the meaning of "prior express consent" under the TCPA. Both cases address FCC orders and the courts' ability to interpret those orders. The Mais decision acknowledges that the TCPA has national implications regarding its application, see Mais v. Gulf Coast Collection Bureau, Inc., 2013 W.L. 1899616, - F. Supp. 2d - (S.D. Fla. May 8, 2013) and further acknowledges that this important area of law, especially after Mims v. Arrow Financial Services, LLC, 132 S. CT. 742 2012, opened the federal courthouse doors to TCPA issues. Id. at *9. As previously noted, this Court in Analect, commented that issues that can have precedential value for a broad number of cases is a persuasive factor in determining to certify an appeal. See Analect, supra at * 4. Further, as here, the Mais Court stated that the underlying issue involved a controlling question of law because it involved the application of facts with respect to consent. Id. at *8.

## V. CONCLUSION

Finally, plaintiff goes to great length to argue that its claims of spoliation somehow have some sort of interplay with defendant's motion to certify the Court Order of September 23, 2013 for appeal.[4] In Saunders v. NCO Financial Systems, 910 F.

---

[3] Plaintiff complains of RPM availing itself to its right to seek certification for appeal as prolonging this litigation yet the defendants in Mais v. Gulf Coast Collection Bureau, Inc., 2013 W.L. 1899616, - F. Supp. 2d -(S.D. Fla. May 8, 2013) and Sussman v. I. C. System, Inc. supra. employed the same procedure because there, as here, the defendants seek to clarify uncertain meanings of the TCPA as opposed to any other reason, real or contrived by Plaintiff.

[4] The plaintiff relies on Haley v. Cruz Network Assistance, LLC 2013 WL 5937007 (W.D.N.Y.) in support of its argument that the plaintiff was telling the defendant not to call and therefore, awarded treble damages. What the plaintiff fails to disclose here is that defendant failed to defend the action and the Court moved on pursuant to the

Supp. 2d 464 (2012 E.D.N.Y.), this disrict held that there is no provision in the TCPA, unlike the FDCPA, that allows a withdrawal of a voluntarily – given prior express consent to call a cell phone number. Id. at 468. Similarly, if Mr. Levy called RPM, engaged in conversations regarding the debt and then decided he did not want to receive phone calls anymore because he could not reach a settlement agreement, he cannot be made to complain that he continued to receive telephone calls. These are factual questions which should be determined by the jury. Other decisions have found that once that consent was provided, plaintiff could only revoke that consent in writing. See, Starkey v. First Source Advantage, LLC, 2010 WL 2541756 at *6 (W.D.N.Y.) Plaintiff never revoked his consent in writing even after he retained counsel.

RPM asks the Court grant this motion to allow the Second Circuit to determine whether it wants to hear the appeal now or after trial. For these reasons, it is respectfully submitted that RPM has demonstrated that the Court's September 23, 2013 order should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and this Court should grant this motion.

Respectfully submitted this 21st day of November 2013.

/s/Peter Cipparulo, III, Esq.

Law Offices of Peter Cipparulo, III, LLC
349 Route 206, Suite K
Hillsborough, NJ 08844
Attorney for Defendant
T: 908-275-8777
F: 973-737-1617
E: petercipparulo@cipplaw.com

---

default judgment standard. Id. at *2. As such, the Court accepted all of the plaintiff's allegations as proof of facts that defendant was deemed to have admitted. Id. at *4.