FILED
CLERK

4/4/2014

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

                                       .
  Omer Levy,                           .   Docket #CV-11-3155 (JFB)
                                       .
           Plaintiffs,                 .
                                       .   United States Courthouse
              V.                       .   Central Islip, New York
                                       .   January 8, 2014
  Receivables Performance              .   11:39 a.m.
  Management, LLC,                     .
                                       .
           Defendant.                  .
  .................................
```

TRANSCRIPT OF OPINION OF COURT RE: MOTION FOR CERTIFICATE OF
APPEALABILITY
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For The Plaintiff:<br>(Via telephone) | Joseph Mauro, Esq.<br>The Law Ofice of Joseph Mauro, LLC<br>306 McCall Avenue<br>West Islip, NY 11795 |
| For The Defendant:<br>(Via telephone) | Peter Cipparulo, Esq.<br>349 Doctors Way-Ste. K<br>Hillsborough, NJ 08844 |
| Audio Operator: | |
| Transcribing Firm: | Writer's Cramp, Inc.<br>6 Norton Rd.<br>Monmouth Jct., NJ 08852<br>732-329-0191 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

                                                                        2

1                THE CLERK:  Calling case 11-CV-3155, <u>Levy vs. RPM</u>.
2       Please state your appearance for the record.
3                MR. MAURO:  For the Plaintiff, this is Joseph Mauro.
4       Good morning Your Honor.
5                THE COURT:  Good morning.
6                MR. CIPPARULO:  For the Defendant, Peter Cipparulo,
7       C-I-P-P-A-R-U-L-O.  Good morning, Your Honor.
8                THE COURT:  Good morning.  I scheduled this
9       conference to place the Court's ruling on the record with
10      respect to the Motion to Certify the Case of Interlocutory
11      Appeal.  So, if anyone wants to add anything to their papers,
12      I'll give them a brief chance to do that now before the Court
13      places the ruling on the record.  Mr. Cipparulo, is there
14      anything you want to add to your papers?
15               MR. CIPPARULO:  No, Your Honor.  There's a case I
16      found yesterday that was recently entered in the California
17      9th District, I believe.  Just gave a good faith -- Southern
18      District of California -- gave a good faith exception to the
19      expressed consent requirement of the TCPA -- the case made for
20      purposes of the record is <u>Chyba versus First Financial Asset</u>
21      <u>Management</u>, case number 12-CV-1721, and essentially the case
22      provides a good faith exception, even if you don't have
23      expressed -- formal expressed consent to contact a Debtor.
24               THE COURT:  Okay.  Mr. Mauro is there anything else?
25               MR. MAURO:  Judge, I don't know the case, but there

```
 1   is no good faith exception provided for in the statute.
 2            THE COURT:  Well, the other thing is, Mr. Cipparulo,
 3   just with respect to the appeal, I think we've discussed this
 4   previously in connection with the Court's opinion at the prior
 5   oral argument, but that only deals with a portion of the calls
 6   in this case in any event, correct?
 7            MR. CIPPARULO:  It does deal with the -- well, I
 8   think it could be read broadly to encompass all the calls,
 9   Your Honor.
10            THE COURT:  I'm sorry?  In other words, the ruling
11   that you think made a legal error with respect to -- would
12   only pertain to the calls that took place after the Plaintiff
13   -- after there was an argument that he provided consent.  In
14   other words, there was a series of calls even before that,
15   right?
16            MR. CIPPARULO:  Well, yeah.  I mean, essentially,
17   Your Honor, I'm not willing to -- the purpose of the appeal is
18   that reasonable minds can differ as to whether the
19   circumstances, even from before, but in particular with the --
20   after initial contact was made could apply.
21            THE COURT:  From the very beginning you're talking
22   about?  From the very first call?  That's what you're talking
23   about?
24            MR. CIPPARULO:  Well, I assert that especially --
25   reasonable minds could differ as to whether we had, based on
```

1  all the circumstances regarding Mr. Levy providing various
2  cell phone numbers, and then also, added to that argument,
3  after initial contact was made, Your Honor.  So, respectfully,
4  Defendant is not willing to concede that none of the calls
5  that -- Defendant is judged on having expenses based on all
6  the calls, but our argument is in particularly after contact
7  was made with Mr. Levy.
8           THE COURT:  Okay.  I'm going to place the Court's
9  ruling on the record.  If you want to order a copy of this,
10 it's being recorded here and you can contact my Deputy and
11 she'll explain to you how you can order a copy of the
12 transcript of the Court's ruling.
13          MR. CIPPARULO:  Thank you.
14          THE COURT:  The Court, for the reasons I'll explain
15 in a moment, finds that the Defendant has not met the
16 statutory requirements for certification, and even assuming
17 arguendo, that those requirements were satisfied, I would
18 still deny the application in the exercise of my discretion
19 because I do not believe that this matter qualifies as the
20 exceptional case where immediate appeal would avoid protracted
21 and expansive litigation.  With respect to the standard for
22 interlocutory review certifications, I've set that forth in a
23 prior opinion, <u>Analect, LLC versus Fifth Third Bancorp</u>, 2009
24 WL 2568540 Eastern District of New York, August 19, 2009.  I
25 adopt that standard in its entirety without repeating it here,

1   in summary obviously certification is governed by Section
2   1292(b) and "the Court may certify an interlocutory order for
3   appeal if it shall be of the opinion that such order involves
4   a controlling question of law as to which there is substantial
5   ground for difference of opinion and that an immediate appeal
6   from that order may materially advance the ultimate
7   termination of the litigation."  First, I want to briefly
8   discuss the FCC's 2012 TCPA order which is the primary basis
9   for the motion as well as the -- I just want to briefly
10  discuss what I did and did not say in the September 2013
11  memorandum and order.  In that memorandum and order, obviously
12  I just remind the parties that I've not decided whether or not
13  the FCC's opinions are binding on this Court.  I think I made
14  that clear in the memorandum and order, and reached the
15  conclusions that I did independent of that question, looking
16  at the FCC prior order.
17      Now, with respect to the 2012 TCPA order, I just want to
18  review again, my view with respect to that.  The FCC stated
19  that {quote} "The TCPA is silent on the issue of what form of
20  expressed consent or written or some other kind is required
21  for calls that use an automatic telephone dialing system or
22  prerecorded voice to deliver a telemarketing message."  That's
23  on page 1838 of the opinion, in addressing debt collection
24  calls, the FCC noted commentator's concern about obtaining
25  written consent for such calls and concluded that, {quote}

1  "such calls to the extent they do not contain telemarketing
2  messages would not require any consent when made to
3  residential land lines, but require either written or oral
4  consent if made to wireless consumers and other specified
5  recipients."  That's at page 1841.  Reading that opinion,
6  there's nothing in the 2012 order that changes the rule
7  stemming from the FCC's 2008 TCPA order that prior expressed
8  consent is deemed to be granted, {quote} "only if the wireless
9  number was provided by the consumer to the creditor and that
10 such number was provided during that transaction that resulted
11 in a debt owed."  That's <u>Castro v. Green Tree Servicing, LLC</u>,
12 2013, WL 4105196, at page 17, Southern District of New York,
13 August 14, 2013, is the quote that I just read from.  There's
14 also nothing in the 2012 order that necessarily implies that
15 prior expressed consent can or cannot arise during subsequent
16 transactions involving the debt owed.  In the September 2013
17 memorandum order, I concluded that Plaintiff did not provide
18 the cell phone number at issue to the originating creditor,
19 and therefore, had not expressly consented to RPM calling him
20 on that number.  In addition, I concluded that it was
21 uncontroverted that Plaintiff did not have the cell phone
22 number at issue until three years after filling out the credit
23 application and that he never provided that number to RPM or
24 Household -- that RPM received a number from TransUnion and
25 that Plaintiff took no affirmative action to provide his cell

1  phone number to RPM or Household at some later point in time.
2  Thus, under the 2008 FCC TCPA order, and in fact, under the
3  2012 order, liability exists for the initial calls to the
4  Plaintiff under those facts.  Here, the argument, as I
5  understand it, or I believe it to be, is the number of TCPA
6  violations that constitute liability and obviously affect the
7  extent of the Plaintiff's damages.  Regardless, relying on
8  Castro I also expressly rejected RPM's argument that Plaintiff
9  provided prior expressed consent by calling and discussing the
10 situation with RPM.  I did not hold that the prior expressed
11 consent must have been in writing.  Instead, I reasoned that
12 RPM received a cell phone number that had dialed from someone
13 other than the Plaintiff and recognized Castro's reasoning
14 that capturing a number by caller ID without notice to the
15 caller cannot constitute prior expressed consent, and I
16 rejected RPM's argument that Plaintiff affirmatively showed
17 prior expressed consent when he verified his cell number and
18 updated his contact information with the RPM representative.
19 Given those facts, I don't think there's anything in the 2012
20 order that negates or contradicts the Court's finding with
21 respect to their liability as it relates to the balance of
22 RPM's calls.  Therefore, under these circumstances, I would
23 deny certification in my discretion, even if the statutory
24 requirements for certification were met, because I don't
25 believe this is an exceptional case warranting interlocutory

```
 1   appeal.  With respect to the question of controlling -- it --
 2   requiring a controlling question of law in determining whether
 3   a controlling question of law exists, the Court must consider
 4   whether a reversal of the opinion could result in dismissal of
 5   the action, whether a reversal, even though not resulting in
 6   dismissal, could significantly affect the conduct of the
 7   action, or that the certified issue has precedential value for
 8   a large number of cases.
 9         SEC Credit Bancorp LTD, 1003 F. Supp. 2d 223227, Southern
10   District of New York, 2000.  Here, the main issue that RPM
11   contests here would not, as I just noted before, terminate or
12   eliminate the case as a whole.  It might modify the extent of
13   the Plaintiff's damages, but it would not end the case, is not
14   a controlling question of law in my view that would end the
15   case entirely.  With respect to precedential value, RPM argues
16   that the central question the 2nd Circuit must resolve is
17   whether a Debtor can manifest prior expressed consent by his
18   conduct as well as his words, but this case involves, as I
19   think RPM admits, a rather unique fact pattern as it relates
20   to how the calls developed with respect to the issue of
21   consent, and therefore I don't see how this particular case
22   and the particular facts of this case have precedential value
23   for a large number of cases, being impacted by the Court's
24   decision.  So, for those reasons, I don't believe the
25   controlling question of law requirement has been met.
```

1      With respect to the substantial ground for difference of
2   opinion prong, the requirement may be met 1) if there's
3   conflicting authority on the issue, or 2) the issue is
4   particularly difficult in a first impression in the circuit.
5   RPM does not argue that this case is a difficult issue of --
6   {quote} {unquote} "difficult issue in first impression."  It
7   does contend that there is conflicting authority on the issue.
8   However, again, because of the facts as it relates to this
9   case, I disagree.  In the cases RPM relies on, the Plaintiff
10  voluntarily provided his or her number to the Defendant or the
11  communications at issue clearly did not implicate the privacy
12  concerns underlying the TCPA.  For instance, in <u>Saunders v.
13  NCO Financial Systems, Inc.</u>, 910 F. Supp. 2d 464, Eastern
14  District of New York, 2012, and <u>Nigro v. Mercantile Adjustment
15  Bureau</u>, 2013 WL 951497, Western District of New York, 2013.
16  "The Plaintiffs voluntarily gave their numbers to the original
17  creditors when they opened their accounts."  Similarly in
18  <u>Emanuel v. Los Angeles Lakers</u>, 2013 WL 1719035, Central
19  District of California, April 18, 2013, and <u>Ibey v. Taco Bell
20  Corp.</u>, 2012 WL 2401972, Southern District of California, June
21  18, 2012, "The Plaintiff's sent the initial text messages to
22  the Defendants while the Defendants responded with
23  confirmatory texts."  Both Courts concluded that the TCPA does
24  not impose liability for a single confirmatory text message,
25  rather than bulk communications and intrusive nuisance calls.

1   And these cases which RPM sites establishing conflicting
2   authority are completely different from the facts that the
3   Court has here where the issue is whether or not 280+ calls
4   that Levy received under the circumstances that the Court laid
5   out in its prior opinion, in short, RPM ostensibly argues that
6   prior expressed consent exists the moment an individual
7   contacts a debt collector, even to demand that the debt
8   collector stop calling, simply because the individual has
9   given or verified the number with the other party.  I'm aware
10  of no support in the case or the FCC opinions for such a rule,
11  which for all intents and purposes could require a caller to
12  block his or her number each time he or she calls in order to
13  avoid being considered to have given prior expressed consent.
14  I'm aware of no case that stands for that proposition of law
15  that RPM is essentially asserting here.  Therefore, I don't
16  believe there are grounds for substantial difference of
17  opinion as to the facts presented before this Court, and RPM's
18  disagreement with this Court's holding does not suffice.
19       Finally, with respect to the material advancement of the
20  litigation, RPM argues there would be a possibility of retrial
21  on the TCPA issue if it succeeds on appeal before the 2nd
22  Circuit at a later date.  As I noted in _Analect_ while the
23  possibility of retrial after a final order may in certain
24  instances support certification, the majority of the District
25  Courts {quote} "have found that certification under Section

1  1292 will materially advance the ultimate term of the
2  litigation and reversal would end the litigation." {end of
3  quote}  In re Methyl Tertiary Butyl Ether, 2008 WL 2511038 at
4  page 5, Southern District of New York, June 18, 2008, as I
5  noted previously, I don't believe reversal would end this
6  litigation, even if the Court were wrong with respect to the
7  subsequent contact and calls that the Plaintiff had with the
8  Defendant in this case, the matter would proceed to trial
9  regardless if the 2nd Circuit disagreed with this Court's view
10 with respect to that contact.  Therefore, I believe
11 certification would only delay these proceedings an additional
12 amount of time, after which the matter would have to continue
13 to trial in any event, after which the parties would retain
14 the right to appeal the outcome of that trial.  Therefore, an
15 additional layer of appeal and delay would hardly serve under
16 these circumstances to materially advance the termination of
17 this litigation, particularly given the Court's conclusion
18 that the FCC's 2012 TCPA order has not materially altered the
19 state of the law or the issues of liability as it relates to
20 this case; the peculiar facts of this case.
21      So, for those reasons, the Motion for Certification is
22 denied.  So, have you prepared a pretrial order in this case?
23           MR. MAURO:  Your Honor, we were -- during our last
24 conference, you indicated, I believe -- earlier indicated that
25 we should wait to see what the results of this was.

1          THE COURT:  Right.  Okay, so -- you want 45 days to
2    do that?
3          MR. MAURO:  Yes, Your Honor.  That's fine.
4          THE COURT:  Mr. Cipparulo, is that fine?
5          MR. CIPPARULO:  Yes, yes, Your Honor.
6          THE COURT:  So, February 24th?
7          MR. MAURO:  Your Honor, is there a -- does the Court
8    set a trial date at this time or after --
9          THE COURT:  No, what will happen is when the
10   pretrial order is submitted, then within 10 days or so, that
11   order being submitted, we'll have a phone call to set a trial
12   date at that point.
13         MR. MAURO:  Thank you.
14         THE COURT:  Okay?
15         MR. CIPPARULO:  Thank you, Your Honor.
16         THE COURT:  Okay, have a good day, counsel.  Thank
17   you.
18         (Court adjourned)
19
20                        CERTIFICATION
21   I certify that the foregoing is a correct transcript from the
22   electronic sound recording of the proceedings in the above-
23   entitled matter.
24
25
26   *Lewis Parham*                                  4/4/14
27
28   _____          _____
29   Signature of Transcriber                      Date